Jared B. Spiegel
Bowles Liberman & Newman LLP
54 West 21st Street, Suite 1007
New York, New York 10010
T: (212) 390-8846
F: (866) 844-8305
E: jspiegel@blnlaw.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FIRSTBANK<br><br>                    Plaintiff,<br><br>          v.<br><br>EDWARD GERALD KAY and HEIDI KAY<br><br>                    Defendants.<br><br>---<br><br>EDWARD GERALD KAY and HEIDI KAY<br><br>                    Third-Party Plaintiffs,<br><br>          v.<br><br>JUSTIN PERRYMAN, ATTORNEY AT LAW, PLLC, LIFE FINANCE CAPITAL LLC, IRA BRODY, THE TRADITIONAL GROUP ENTERPRISE, LLC and RALPH ANDERSON,<br><br>                    Third-Party Defendants. | Civil Action No. 12-7773 (KSH)<br><br>**AMENDED THIRD-PARTY COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Third-Party Plaintiffs Edward Gerald Kay ("Mr. Kay") and Heidi Kay ("Mrs. Kay") (collectively "Third-Party Plaintiffs" or the "Kays"), for their Third-Party Complaint against Third-Party Defendants Justin Perryman, Attorney at Law, PLLC ("Perryman"), Life Finance Capital LLC ("Life Finance"), Ira Brody ("Brody"), The Traditional Group Enterprise, LLC ("Traditional"), and Ralph Anderson ("Anderson") (collectively "Third-Party Defendants"), allege as follows.

## NATURE OF THE CLAIMS

1.  In or about late 2009 Anderson approached Third-Party Plaintiff Edward Gerald Kay with an investment scheme: Anderson would, through his own efforts and that of third parties, provide the Kays with an investment vehicle that would require no investment on the Kays' part, and would have no personal risk.  The offer was that (1) one or more of Third-Party Defendants would assist the Kays in creating a trust; (2) the trust would take out a loan of several hundred thousand dollars, to be placed in the trust; (3) the trust would arrange for issuance of a life insurance policy in the amount of several million dollars, insuring Mr. Kay's life; (4) the premiums would be paid out of the trust; (5) the policy would be sold on the secondary market, the profits would pay back the loan and the Kays would reap the remainder of the profits, which Anderson said would be several hundred thousand dollars.  Anderson assured Mr. Kay that the loan would be collateralized only by the insurance policy, and that the Kays would not have to personally guaranty the loan.

2.  The scheme was a fraud, designed to do nothing but create exorbitant transaction fees and leave the Kays liable for the value of the loan.  Further, on information and belief, one of the Third-Party Defendants forged the signatures of both Mr. Kay and Mrs. Kay on a personal guaranty for the loan without their knowledge, and fraudulently arranged for a notary in Pennsylvania to notarize the forged guaranty signatures.

3.  Third-Party Defendant Perryman, the trustee, failed to protect the trust.  On or about August 3, 2010, he arranged to pay over $100,000 from the trust to Third-Party Defendant Life Finance.  Perryman did not contact the Kays before disbursing these funds.  Perryman then abandoned his trust for active service in the military, without arranging for a substitute trustee.

2

4.   Due to lack of payments from the trust administered by Perryman as the trustee, the life insurance policy failed.  The loan reached maturity, and Plaintiff FirstBank ("FirstBank") sued the Kays for breach of the fraudulent personal guaranty.  Third-Party Plaintiffs brought this third-party action shortly thereafter.

## THE PARTIES

5.   Third-Party Plaintiffs are individuals residing at 703 Peachtree Lane, Franklin Lakes, New Jersey.

6.   Third-Party Defendant Perryman is a PLLC formed, on information and belief, under the laws of the State of Texas, with a business address at 2312 Katy Fort Bend Road, Katy, Texas. Perryman acted as the trustee for the aforementioned trust at all times relevant this lawsuit.

7.   Third-Party Defendant Life Finance is a limited liability company organized under the laws of the State of Tennessee, with offices at 6815 Halls Hill Pike, Murfreesboro, Tennessee.

8.   Third-Party Defendant Brody is, on information and belief, a resident of Rye, New York.

9.   Third-Party Defendant Traditional Group is, on information and belief, a Florida limited liability company with offices at 9010 Strada Court, Suite 104, Naples, Florida.

10. Third-Party Defendant Ralph Anderson is, on information and belief, a resident of New Jersey.

## JURISDICTION AND VENUE

11. This Court has ancillary, pendant, and supplemental jurisdiction over the claims set forth in this Third-Party Complaint pursuant to 28 U.S.C. § 1367 because the underlying transactions, facts, and controversies arise out of the same case and controversy and nucleus of facts as those claims asserted in the Complaint in this action.

12. Venue of the Third-Party Claims in this District and this Court is proper under 28 U.S.C. § 1391.

## FACTS RELATING TO THE THIRD-PARTY CLAIMS

13. In or about late 2009, Anderson met with Mr. Kay in Mr. Kay's office in Hillside, New Jersey, to attempt to persuade Mr. Kay to accept various financial services.

14. Among those services, Anderson offered Mr. Kay a financial instrument with the following characteristics (this collection of transactions is described hereinafter as the "Instrument"):

  a.  Anderson, through third parties unnamed at the time, would arrange to set up a trust for Mr. Kay, with his wife, Ms. Kay, and his children as the beneficiaries of the trust.

  b.  The trust would borrow money from a bank, which monies would be placed into the trust.

  c.  The loaned money would be used to purchase a life insurance policy against Mr. Kay's life, in the amount of ten million dollars ($10,000,000). The insurance policy premiums would be paid from the trust.

  d.  The only collateral for the loan would be the value of the life insurance policy; there would be no personal guaranty by Mr. or Mrs. Kay.

  e.  Anderson and the unnamed third parties would arrange to sell the policy on the secondary market, and the purchaser would then be responsible for the policy's premium payments.

  f.  As the loan would only be collateralized by the value of the policy, and there was to be no personal guaranty, there was no personal risk to the Kays.

15. Based on the offer and representations made by Anderson, Mr. Kay agreed to enter into the Instrument.

16. The documents underlying the Instrument were arranged and drafted by Traditional, Brody, and Life Finance.

17. On or about July 29, 2010, Anderson met again with Mr. Kay in Mr. Kay's office in Hillside, New Jersey, for the purpose of signing the necessary papers to implement the Instrument.

18. Only Mr. Kay and Anderson were present at the July 29, 2010 meeting for Mr. Kay to execute the papers underlying the Instrument.

19. Heidi Kay did not execute any part of the Instrument.

20. Unbeknownst to Third-Party Plaintiffs, Third-Party Defendants forged the signatures of Mr. Kay and Mrs. Kay on numerous documents, including various documents applying for the Instrument, and also forged a personal guaranty for the purposes of obtaining the loan from Plaintiff FirstBank.

**The Forged Guaranty**

21. One of the documents attached to the December 21, 2012 Complaint by Plaintiff FirstBank ("FirstBank") is a personal guaranty (the "Guaranty"), purportedly executed by Mr. and Mrs. Kay on July 29, 2010.

22. The Guaranty indicates that it was executed on July 29, 2010, in New Jersey, by Mr. and Mrs. Kay.

23. The purported signatures of Mr. and Mrs. Kay do not resemble their signatures on the loan or life insurance policy application documents.  A comparison of signatures on Guaranty to application papers is attached hereto as Exhibit A.

24. The Guaranty indicates that it was executed by both Edward Gerald Kay and Heidi Kay on July 29, 2010, in New Jersey.

25. The notarization of the Guaranty is by a Pennsylvania notary, not a New Jersey notary.

26. Neither Edward Gerald Kay nor Heidi Kay were in Pennsylvania in or about July 29, 2010.

27. The representation in the Guaranty by the notary that Edward Gerald Kay and Heidi Kay "personally appeared" and acknowledged their execution is false.

28. The Guaranty is a forgery.

**Brody's Background**

29. Brody has been accused of forging life insurance related financial instruments in more than one other lawsuit.

30. On September 14, 2010, Concord Capital Management, LLC and other plaintiffs filed a lawsuit against Brody and other defendants in New York state court, in the matter of Concord Capital Management, LLC *et al.* v. Fifth Third Bank *et al.*, Index No. 650478/2010 (New York County) (the "Concord Matter").

31. Plaintiffs in the Concord Matter alleged that Brody and the other defendants had engaged in, *inter alia*, the "forgery of purported insureds' signatures and the generation of fraudulent and excessive fees . . . charged to insureds' trusts."

32. One of the individuals that allegedly assisted Brody in the Concord Matter is named Gary Brecka ("Brecka").

33. Brecka was also an employee with Traditional, who assisted Brody in arranging for the Instrument in this matter.

34. The Concord Matter has not yet been resolved by the New York Courts.

35. On November 7, 2012, Timothy Harper and other plaintiffs filed a lawsuit against Brody and other defendants in the United States District Court for the Northern District of Texas, in the matter of <u>Timothy Harper *et al.* v. Ira Lawrence Brody *et al.*</u>, Case No. 4-12-cv-801 (N.D.Tex.) (the "Harper Matter").

36. Plaintiffs in the Harper Matter alleged that Brody and the other defendants had forged a document relating to the assignment of a fictitious life insurance policy.

37. Brody and the other defendants defaulted on the Harper Matter, and a default judgment was issued.

38. Brody therefore has a history of allegations against him relating to forgery of life insurance related documents.

39. On information and belief, Brody and the other Third-Party Defendants worked together to forge the signatures on the Guaranty.

**The Loan Agreement**

40. On August 2, 2010, Perryman, as trustee to the E. Gerald Kay Irrevocable Trust (the "Trust"), and FirstBank entered into a Loan and Security Agreement (the "Loan Agreement"). A copy of the Loan Agreement is attached hereto as <u>Exhibit B</u>.

41. The express purpose of the Loan Agreement was for the Trust to borrow funds from Plaintiff in order to pay the premium for an insurance policy (the "Policy") issued by the Lincoln National Life Insurance Company ("Lincoln Life").

42. The Policy had the face value of five million dollars ($5,000,000).

43. The Policy insured the life of Mr. Kay.

44. The loan amount was three hundred ninety-one thousand and seventy-six dollars ($391,076). Ex. B at ¶ 3(a).

7

45. Pursuant to the terms of the Loan Agreement, FirstBank was authorized by the Trust to disburse the "Premium Amount" to Lincoln Life.  Ex. B at ¶ 3(a).

46. The Premium Amount was three hundred and sixty-six thousand and seventy-six dollars ($366,076).  Ex. B at ¶ 2.

47. The Premium Amount constituted the estimated total of the life insurance premiums for twenty-seven (27) months from the effective date of the Policy.  Ex. B at ¶ 2.

48. FirstBank was also authorized to retain "Capitalized Expenses."  Ex. B at ¶ 3(a).

49. The term "Capitalized Expenses" was defined to include a Loan Origination Fee, a Loan Structuring Fee, a Loan Commitment Fee, interest expenses, and the Closing Fee.  Ex. B at ¶ 2.

50. The Loan Origination Fee was defined to be twenty-five thousand dollars ($25,000).  Ex. B at ¶ 2.

51. The Loan Structuring Fee was defined to be zero.  Ex. B at ¶ 2.

52. The Loan Commitment Fee was defined to be zero.  Ex. B at ¶ 2.

53. The Closing Fee was defined to be zero.  Ex. B at ¶ 2.

54. Accordingly, FirstBank was authorized to disburse the Premium Amount three hundred and sixty-six thousand and seventy-six dollars ($366,076) and retain twenty-five thousand dollars ($25,000) in total fees, totaling the full amount of the loan: three hundred ninety-one thousand and seventy-six dollars ($391,076).

55. The Trust was to pay interest only on the loan until its maturity date, which was scheduled to be twenty-three (23) months after the loan issued.  Ex. B at ¶ 2 (definition of Scheduled Maturity Date), unless one of several events (including the death of Kay) occurred.  Ex. B at ¶ 3(b) (definition of "Maturity Date").

56. The loan could be extended at the request of the Trust and the option of FirstBank. Ex. B at ¶ 3(c & d).

57. The Trust expressly agreed to use the loan proceeds only to pay the Premium Amounts, Capitalized Expenses, and additional premium payments with respect to the Policy. Ex. B at ¶ 4.

**The Trust**

58. On August 2, 2010, Kay established the Trust. A copy of the E. Gerald Kay Irrevocable Trust is attached hereto as <u>Exhibit C</u>.

59. The Trust is incorrectly dated August 5, 2009 in the recitals, but was executed on August 2, 2010. Ex. C.

60. The sole purpose and powers of the Trust were to apply for and own the Policy, and to perform the obligations under the Loan Agreement and associated documents. Ex. C at ¶ 3.1.

61. The beneficiaries of the Trust were Third-Party Plaintiff Heidi Kay and the children of Third-Party Plaintiffs, Riva Kay Sheppard and Christina Kay. Ex. C at ¶ 3.2

62. Perryman was appointed as the trustee for the Trust. Ex. C at ¶ 4.1.

63. Perryman's term as trustee was to run until the Loan Agreement was satisfied. Ex. C at ¶ 4.2.

64. Perryman was authorized to execute the Loan Agreement and associated documents and to take other acts in furtherance of that power, but was forbidden from engaging in any business or activity whatsoever except as specifically authorized by the Loan Documents and the Trust. Ex. C at ¶ 4.3.

65. Anderson was appointed the "Protector" of the Trust. Ex. C at ¶ 5.1.

66. As Protector, Anderson had the power to appoint a replacement trustee upon the Perryman's removal or resignation. Ex. C at ¶ 4.3.

9

**Failure of the Trust, Cancellation of the Policy, and Failure to Sell on Secondary Market**

67. Rather than fulfill the purpose of the Trust and pay the premiums and expenses associated with the Policy, Perryman, Life Finance, and Anderson failed to pay the premiums and let the Policy lapse, and took no action to sell the policy on the secondary market, as Anderson had promised to Mr. Kay.

68. Upon issuance of the loan, FirstBank did not pay the Premium Amount of three hundred and sixty-six thousand and seventy-six dollars ($366,076) to Lincoln Life.

69. Upon issuance of the loan, Perryman did not cause FirstBank to pay the Premium Amount of three hundred and sixty-six thousand and seventy-six dollars ($366,076) to Lincoln Life.

70. Only approximately two hundred and seventy-five thousand dollars ($275,000) of the total loan of three hundred ninety-one thousand and seventy-six dollars ($391,076) was actually paid to Lincoln Life.

71. On August 3, 2010 – the day after the establishment of the Trust - Perryman disbursed a cashier's check from the Trust for $100,741.23 to Life Finance Capital.

72. Perryman did not contact the Kays to obtain authorization for this disbursement.

73. The Kays did not authorize this disbursement.

74. In or about June of 2012, premiums on the life insurance policy were due, and there were no funds in the Trust to pay them, and therefore the Trust began to default on the life insurance premiums.

75. At no time during the prior two years had any of the Third-Party Defendants taken any action to sell the life insurance policy on the secondary market, despite Anderson's representations to Gerald Kay that they would do so.

10

76. In or about July of 2012, Perryman was scheduled to leave for active military service.

77. Despite his inability to fulfill his role as a trustee, Perryman did not resign as trustee.

78. Despite his role as protector of the Trust, Anderson did not appoint a successor trustee.

79. Perryman left for active military service without resigning, and with no appointment of a trustee for the Trust.

80. Perryman did not personally contact the Kays to discuss the default on the life insurance premiums.

81. Perryman relied upon Brody to contact the Kays to discuss the default.

82. Brody did not contact the Kays to discuss the default.

83. Therefore, in or about late 2012, the life insurance policy lapsed.

84. In or about July of 2012, payments on the loan from FirstBank also became due.

85. The Kays were unaware of the lapse of the life insurance policy until the service of the Complaint against them in FirstBank, in or about late 2012.

## FIRST CLAIM FOR RELIEF
## AGAINST THIRD-PARTY DEFENDANT PERRYMAN
### Breach of Loan Agreement

86. Third-Party Plaintiffs repeat and reallege the allegations contained in the prior paragraphs as if fully set forth herein.

87. The Loan Agreement was a valid and binding agreement between the Trust and Plaintiff.

88. Third-Party Plaintiffs are third-party beneficiaries of the Loan Agreement, and therefore are entitled to enforce its requirements.

89. By failing to pay the premiums to Lincoln Life as required by the Loan Agreement, or to cause FirstBank to do so, Perryman breached the Loan Agreement.

90. The amount of the Policy was five million dollars ($5,000,000).

11

91. Cancellation of the Policy was a foreseeable consequence of Perryman's breach of contract.

92. Third-Party Plaintiffs have been injured by the loss of the Policy in the amount of five million dollars ($5,000,000).

93. Third-Party Plaintiffs have been injured by the loss of the life insurance policy, the loss of the profits from the Instrument, the amount of the loan from FirstBank, and other amounts to be proven at trial.

## SECOND CLAIM FOR RELIEF
## AGAINST THIRD-PARTY DEFENDANT PERRYMAN AND ANDERSON
### Breach of Trust

94. Third-Party Plaintiffs repeat and reallege the allegations contained in the prior paragraphs as if fully set forth herein.

95. The Trust constitutes a valid and binding agreement between the Trust and Third-Party Plaintiffs.

96. Under the Trust, Perryman was obligated to fulfill the terms of the Loan Agreement, including to cause the payment of premiums required under the Loan Agreement.

97. By failing to pay the premiums to Lincoln Life as required by the Loan Agreement, or to cause FirstBank to do so, Perryman breached the Trust.

98. By leaving for active military service without resigning as trustee, Perryman breached the Trust.

99. As Protector of the Trust, by failing to appoint a new trustee upon learning that Perryman would be leaving for active military service, Anderson breached the Trust.

100.    The amount of the Policy was five million dollars ($5,000,000).

101.    Cancellation of the Policy was a foreseeable consequence of Perryman's breach of contract.

102.    Third-Party Plaintiffs have been injured by the loss of the Policy in the amount of five million dollars ($5,000,000).

103.    Third-Party Plaintiffs have been injured by the loss of the life insurance policy, the loss of the profits from the Instrument, the amount of the loan from FirstBank, and other amounts to be proven at trial.

**THIRD CLAIM FOR RELIEF**
**AGAINST THIRD-PARTY DEFENDANT PERRYMAN**
**Violation of Tennessee Code Annotated §§ 35-15-801, 804, 809, 1002, 1004**

104.    Third-Party Plaintiffs repeat and reallege the allegations contained in the prior paragraphs as if fully set forth herein.

105.    The Trust establishes that Tennessee law governs the validity, meaning, and legal effect of the Trust.  Ex. B at ¶ 9.4.

106.    Tennessee Code Annotated § 35-15-801 establishes that a trustee has the duty to administer a trust in accordance with the terms and purposes and the interests of the beneficiaries.

107.    Tennessee Code Annotated § 35-15-804 requires that a trustee administer a trust with reasonable care, skill and caution.

108.    Tennessee Code Annotated § 35-15-809 requires a trustee to take reasonable steps to take control of and protect the trust property.

109.    Tennessee Code Annotated § 35-15-1002 establishes the damages for breach of trust, which include liability for the amount required to restore the value of the trust property.

110.        Tennessee Code Annotated § 35-15-1004 allows the recovery of costs and expenses, including attorneys' fees.

111.        Perryman was the trustee of the Trust.

112.        By failing to pay the premiums for the Policy, Perryman let the Policy lapse, thus destroying the value of the Trust.

113.        By leaving for active military service without resigning as trustee, Perryman breached the Trust.

114.        The amount of the Policy was five million dollars ($5,000,000).

115.        Third-Party Plaintiffs have been injured by the loss of the Policy in the amount of five million dollars ($5,000,000).

116.        Third-Party Plaintiffs have been injured by the loss of the life insurance policy, the loss of the profits from the Instrument, the amount of the loan from FirstBank, and other amounts to be proven at trial.

**FOURTH CLAIM FOR RELIEF**
**AGAINST THIRD-PARTY DEFENDANT PERRYMAN**
**Breach of Fiduciary Duty**

117.        Third-Party Plaintiffs repeat and reallege the allegations contained in the prior paragraphs as if fully set forth herein.

118.        As the trustee to the Trust, Perryman owed fiduciary duties to the beneficiaries of the Trust, including to Third-Party Plaintiffs.

119.        By failing to pay the premiums for the Policy, Perryman let the Policy lapse, thus destroying the value of the Trust.

120.        Said failure was a breach of the Perryman's fiduciary duties.

121.        The amount of the life insurance policy was five million dollars ($5,000,000).

122.      Third-Party Plaintiffs have been injured by the loss of the Policy in the amount of five million dollars ($5,000,000).

123.      Third-Party Plaintiffs have been injured by the loss of the life insurance policy, the loss of the profits from the Instrument, the amount of the loan from FirstBank, and other amounts to be proven at trial.

**FIFTH CLAIM FOR RELIEF**
**AGAINST THIRD-PARTY DEFENDANT LIFE FINANCE AND BRODY**
**Breach of Contract**

124.      Third-Party Plaintiffs repeat and reallege the allegations contained in the prior paragraphs as if fully set forth herein.

125.      Life Finance acted as the financing agent for the Loan Agreement.

126.      On information and belief, Life Finance and the Trust had an enforceable agreement as to Life Finance's fee for his services in brokering the Loan Agreement.

127.      Pursuant to that agreement, Life Finance was, on information and belief, entitled to a fee of twenty-five thousand dollars ($25,000) or less for its services in arrangement of the Loan Agreement.

128.      On information and belief, Life Finance took over one hundred thousand dollars ($100,000) as a fee.

129.      Life Finance's overpayment constitutes a breach of contract.

130.      The amount of the Policy was five million dollars ($5,000,000).

131.      Cancellation of the Policy was a foreseeable consequence of Life Finance's breach of contract.

132.      Third-Party Plaintiffs have been injured by the loss of the life insurance policy in the amount of five million dollars ($5,000,000).

133.     Brody is the sole owner of Life Finance and used this company as his alter ego at all times relevant to this action and is therefore liable for the actions of Life Finance in breaching the agreement with Third-Party Plaintiffs.

134.     Third-Party Plaintiffs have been injured by the loss of the life insurance policy, the loss of the profits from the Instrument, the amount of the loan from FirstBank, and other amounts to be proven at trial.

**SIXTH CLAIM FOR RELIEF**
**AGAINST THIRD-PARTY DEFENDANT LIFE FINANCE AND BRODY**
**Unjust Enrichment**

135.     Third-Party Plaintiffs repeat and reallege the allegations contained in the prior paragraphs as if fully set forth herein.

136.     Life Finance acted as the financing agent for the Loan Agreement.

137.     The total amount of the loan under the Loan Agreement was three hundred ninety-one thousand and seventy-six dollars ($391,076).

138.     On information and belief, Life Finance took over one hundred thousand dollars ($100,000) as a fee for brokering the Loan Agreement.

139.     On information and belief, Life Finance also received over one hundred and sixty thousand dollars ($160,000) as a commission from Lincoln Life.

140.     It would be unjust for Life Finance to retain these fees.

141.     Brody is the sole owner of Life Finance and used this company as his alter ego at all times relevant to this action and is therefore liable for the actions of Life Finance.

142.     Accordingly, Life Finance is liable to Third-Party Plaintiffs for an amount to be shown at trial.

16

## SEVENTH CLAIM FOR RELIEF
## AGAINST ANDERSON
### Fraudulent Inducement

143.    Third-Party Plaintiffs repeat and reallege the allegations contained in the prior paragraphs as if fully set forth herein.

144.    As stated above, in or about late 2009, at Mr. Kay's offices in New Jersey, in a meeting between Mr. Kay and Anderson, Anderson stated that he, with the assistance of then-unidentified third parties, would provide to the Kays the Instrument, which would involve no personal risk to the Kays because it would include no personal guaranty, and that it would be sold on the secondary market before the Kays would be responsible for any premiums.

145.    These statements were false, because FirstBank required a personal guaranty for the loans, and the underlying life insurance policy would not and could not be sold on the secondary market. Anderson knew that the statements were false.

146.    Anderson intended for Kays to rely upon his misrepresentations.

147.    The Kays relied upon Anderson's misrepresentations, because they would not have entered into the Instrument had they known that they were false, that the loan would require a personal guaranty, and that the life insurance policy would not and could not be sold on the secondary market.

148.    Third-Party Plaintiffs have been injured by the loss of the life insurance policy, the loss of the profits from the Instrument, the amount of the loan from FirstBank, and other amounts to be proven at trial.

**EIGHTH CLAIM FOR RELIEF**
**AGAINST LIFE FINANCE, BRODY, AND TRADITIONAL**
**Aiding and Abetting Fraudulent Inducement**

149.    Third-Party Plaintiffs repeat and reallege the allegations contained in the prior paragraphs as if fully set forth herein.

150.    As stated in the prior claim, Anderson committed fraudulent inducement against the Third-Party Plaintiffs.

151.    Brody, Life Finance, and Traditional were aware of, substantially assisted, and encouraged Anderson in his fraudulent inducement.

152.    On information and belief, Brody, Life Finance, and Traditional conceived of the underlying scheme that underlay the Instrument, and introduced it to Anderson.

153.    Brody, Life Finance, and Traditional then arranged for and drafted all of the underlying documents relating to the instrument.

154.    Third-Party Plaintiffs have been injured by the loss of the life insurance policy, the loss of the profits from the Instrument, the amount of the loan from FirstBank, and other amounts to be proven at trial.

**NINTH CLAIM FOR RELIEF**
**AGAINST ANDERSON, LIFE FINANCE, BRODY, AND TRADITIONAL**
**Fraud**

155.    Third-Party Plaintiffs repeat and reallege the allegations contained in the prior paragraphs as if fully set forth herein.

156.    During the period between Anderson's meeting with Gerald Kay in or about late 2009 and the implementation of the instrument in July of 2010, Anderson, Life Finance, Brody and Traditional arranged for the forgery of the signatures of Gerald and Heidi Kay to documents

in application for the loan and life insurance policy, and arranged for witnesses and/or notaries to falsely testify as to the validity of their signatures.  *See* Exhibit A.

157.    Anderson, Life Finance, Brody and Traditional also arranged for the forgery of the signatures of Gerald and Heidi Kay to a personal guaranty on the loan during the same time period.  *See* Exhibit A.

158.    These forgeries were done for the purpose of misrepresenting that the Kays had actually signed these documents, and Anderson, Life Finance, Brody and Traditional intended that the recipients of these documents rely upon the misrepresentations.

159.    Third-Party Plaintiffs have been injured by the loss of the life insurance policy, the loss of the profits from the Instrument, the amount of the loan from FirstBank, and other amounts to be proven at trial.

**TENTH CLAIM FOR RELIEF
AGAINST ANDERSON, LIFE FINANCE, BRODY, AND TRADITIONAL
Forgery**

160.    Third-Party Plaintiffs repeat and reallege the allegations contained in the prior paragraphs as if fully set forth herein.

161.    During the period between Anderson's meeting with Gerald Kay in or about late 2009 and the implementation of the instrument in July of 2010, Anderson, Life Finance, Brody and Traditional arranged for the forgery of the signatures of Gerald and Heidi Kay to documents in application for the loan and life insurance policy, and arranged for witnesses and/or notaries to falsely testify as to the validity of their signatures.  *See* Exhibit A.

162.    Anderson, Life Finance, Brody and Traditional also arranged for the forgery of the signatures of Gerald and Heidi Kay to a personal guaranty on the loan during the same time period.

163.     These forgeries were done for the purpose of misrepresenting that the Kays had actually signed these documents, and Anderson, Life Finance, Brody and Traditional intended that the recipients of these documents rely upon the misrepresentations.

164.     Third-Party Plaintiffs have been injured by the loss of the life insurance policy, the loss of the profits from the Instrument, the amount of the loan from FirstBank, and other amounts to be proven at trial.

## ELEVENTH CLAIM FOR RELIEF
## AGAINST THE THIRD-PARTY DEFENDANTS
### Common Law Indemnity

165.     Third-Party Plaintiffs repeat and reallege the allegations contained in the prior paragraphs as if fully set forth herein.

166.     Under the circumstances alleged above, the obligation of indemnification by Third-Party Defendants is a necessary element of the parties' relationship.

167.     On December 20, 2012, FirstBank brought a complaint against Third-Party Plaintiffs in this matter for the alleged breach of a personal guaranty by Third-Party Plaintiffs.

168.     FirstBank seeks, inter alia, damages of $391,076.00.

169.     Third-Party Defendants must indemnify First Bank for some portion of the damages allegedly due to FirstBank.

170.     Third-Party Plaintiffs therefore seek indemnification from Third-Party Defendants for the amount allegedly due and owing to FirstBank.

## TWELFTH CLAIM FOR RELIEF
## AGAINST THIRD-PARTY DEFENDANT ANDERSON
### Violation of the New Jersey Consumer Fraud Act

171.     Third-Party Plaintiffs repeat and reallege the allegations contained in the prior paragraphs as if fully set forth herein.

20

172.      Third-Party Plaintiffs are consumers who paid out-of-pocket to purchase and participate in the transactions that constituted the Instrument, which was marketed and sold to Third-Party Plaintiffs by Anderson.

173.      The subject Instrument is "merchandise" as that term is defined in N.J.S.A. 56:8-1(c).

174.      As stated above, in or about late 2009, at Gerald Kay's offices in New Jersey, in a meeting between Mr. Kay and Anderson, Anderson stated that he, with the assistance of then-unidentified third parties, would provide to the Kays the Instrument, which would involve no personal risk to the Kays because it would include no personal guaranty, and that it would be sold on the secondary market before the Kays would be responsible for any premiums.

175.      At the time of presenting the Instrument for sale to Third-Party Plaintiffs, Anderson knew, or had reason to know, that these statements were false, because FirstBank required a personal guaranty for the loans, and the underlying life insurance policy would not and could not be sold on the secondary market.

176.      Third-Party Plaintiffs relied upon Anderson's misrepresentations, because they would not have entered into the Instrument had they known that they were false, that the loan would require a personal guaranty, and that the life insurance policy would not and could not be sold on the secondary market.

177.      Anderson's intentional failure to disclose this material misrepresentation constitutes an unlawful practice pursuant to N.J.S.A. 56:8-2.

178.      As a direct result of Anderson's conduct, Third-Party Plaintiffs have suffered ascertainable losses as identified above.

## PRAYER FOR RELIEF ON THIRD-PARTY CLAIMS

WHEREFORE, Third-Party Plaintiffs pray for judgment as follows:

    A.  That Third-Party Defendants be held jointly and severally liable for damages in an amount to be shown at trial;

    B.  That Third-Party Defendants be held liable for reasonable costs, expenses, and attorneys' fees;

    C.  That Anderson be held liable for compensatory and/or treble damages to Third-Party Plaintiffs in an amount to be shown at trial;

    D.  That Third-Party Defendants be ordered to contribute to and/or indemnify for any losses suffered by Third-Party Plaintiffs to FirstBank;

    E.  The costs of this suit; and

    F.  Such other and further relief as the Court deems necessary and proper.

## JURY DEMAND

Third-party plaintiffs hereby demand a trial by jury on all claims so triable.

## CERTIFICATION PURSUANT TO L.R. 11.2

The matter in controversy is not presently the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Dated: March 10, 2015

                                _____

Jared B. Spiegel
Bowles Liberman & Newman LLP
54 West 21st Street, Suite 1007
New York, New York 10010
T: (212) 390-8846
F: (866) 844-8305
E: jspiegel@blnlaw.com
*Attorneys for Third-Party Plaintiffs*

22